# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JAMES PERKINS, et al.,

      Plaintiffs,

                            **Case No. 2:11-cv-952**

    v.                        **JUDGE GREGORY L. FROST**

                            **Magistrate Judge Elizabeth P. Deavers**

WELLS FARGO BANK, N.A., et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of three motions to dismiss. The Court has considered Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss the amended complaint (ECF No. 31), Plaintiffs' response in opposition (ECF No. 44), and Wells Fargo's reply (ECF No. 54); Defendant Fifth Third Bank's ("Fifth Third") motion to dismiss the amended complaint (ECF No. 34), Plaintiffs' response in opposition (ECF No. 46), and Fifth Third's reply (ECF No. 55); and Defendant Lerner, Sampson & Rothfuss' ("Lerner Sampson") motion to dismiss the amended complaint (ECF No. 45), Plaintiffs' response in opposition (ECF No. 53), and Lerner Sampson's reply (ECF No. 56). The Court has also considered Plaintiffs' motion to file a surreply to Lerner Sampson's reply in support of its motion to dismiss. (ECF No. 57.)

For the reasons that follow, the Court **GRANTS** the motions to dismiss (ECF Nos. 31, 34 & 45) and **DENIES** the motion to file a surreply (ECF No. 57).

## I. Background

The facts in this section are taken from the amended complaint (ECF No. 23), as well as

state court documents that are referenced throughout the amended complaint.[1]

Plaintiffs James and Marianne Perkins ("the Perkins") purchased a home in Columbus, Ohio in 1994. In March 2003, the Perkins signed a note for $300,000 and executed a mortgage on their residence in favor of Integrity Mortgage Corporation ("Integrity"). Integrity assigned the mortgage to Mortgage Registration Systems, Inc., which assigned the mortgage to Wells Fargo. The Perkins later took out a second mortgage on their residence with Fifth Third.

The Perkins initially made payments to Wells Fargo but eventually defaulted on their repayment obligations. Wells Fargo filed a foreclosure complaint on August 24, 2009 ("Foreclosure Complaint," ECF No. 25-1) in the Franklin County, Ohio Court of Common Pleas ("Common Pleas Court"). Lerner Sampson served as Wells Fargo's counsel in the foreclosure action. Fifth Third was named in the foreclosure action due to its second position mortgage on the property.

The Perkins participated in two mediation sessions with Wells Fargo but both were unsuccessful. On December 16, 2009, the Perkins filed an untimely answer to the Foreclosure Complaint. Wells Fargo moved for default judgment but the Common Pleas Court accepted the Perkins' untimely answer and denied Wells Fargo's motion for default judgment.

On January 4, 2010, the Perkins spoke with Wells Fargo about selling their home in a short sale. Wells Fargo told the Perkins that it would have to approve a short sale before any such sale could proceed. Wells Fargo sent the Perkins a letter titled "Notice of short sale option"

---

[1]The Court will consider the state court documents that are referenced throughout the amended complaint without converting Defendants' motions to motions for summary judgment. *See, e.g., Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 30 (6th Cir. 2008); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007).

that detailed the short sale approval process. A representative from Wells Faro told the Perkins to send Wells Fargo any offers that the Perkins received on their property.

On January 15, 2010, Wells Fargo moved for summary judgment in the foreclosure action. The Perkins did not respond to that motion.

The Perkins allege that they received bids on their home from four different parties. The highest bid was for $439,900.00. The Perkins provided this information to Wells Fargo during the first week of March. The Perkins also provided this information to Fifth Third on March 4, 2010, along with information about their mortgage with Wells Fargo.

On March 5, 2010, the Common Pleas Court granted Wells Fargo's summary judgment motion and entered a Judgment Entry of Foreclosure ("Foreclosure Judgment," ECF No. 25-7) against the Perkins. The court awarded judgment to Wells Fargo in the amount of $277,133.40 plus interest. The Perkins did not appeal the Foreclosure Judgment.

That same day, on March 5, 2010, the Perkins sent a copy of the bid on their home to Lerner Sampson. Although the bid was for an amount greater than the $277,133.40 owed to Wells Fargo, the Perkins believed that the sale still required Wells Fargo's approval. The Perkins communicated with three different negotiators at Wells Fargo over the course of three months and each negotiator told the Perkins that he or she was reviewing the file.

On April 20, 2010, the Perkins received notice that, pursuant to the Foreclosure Judgment, their property would be sold at a Sheriff's sale. The Sheriff's sale was scheduled for June 4, 2010. The Perkins filed a motion with the Common Pleas Court to set aside the Sheriff's sale and to allow the parties to engage in mediation. The Common Pleas Court ordered that the case be stayed until July 1, 2010.

On May 25, 2010, the Perkins' realtor informed them that Wells Fargo did not need to approve the sale of their residence because the offer on their residence would satisfy Wells Fargo's lien in full. Wells Fargo confirmed this fact in an email on June 3, 2010. The Perkins then waited on Fifth Third to approve the sale, which it did on June 15, 2010. The sale of the Perkins' residence was scheduled to close on June 30, 2010.

At some point between June 15, 2010, and June 30, 2010, the buyer backed out of the sale of the Perkins' residence. The Perkins re-listed their residence for sale on July 1, 2010, and requested that the Common Pleas Court extend its stay order until September 1, 2010. The Common Pleas Court granted the Perkins' request.

Also during this time, in June and July 2010, a representative of Fifth Third informed the Perkins that they had to catch up on their home equity line payments or a short sale would not be possible. The Perkins made the required payments in June and July but were unable to make the remaining payments.

On July 21, 2010, the Perkins received another offer to purchase their residence. The Perkins called Wells Fargo and informed Wells Fargo that the offer price was sufficient to pay off the $277,133.40 mortgage balance in full. Wells Fargo informed the Perkins that it had to conduct a short sale approval and get a new appraisal of the property. At some point following this conversation, the prospective buyer backed out of the sale.

On August 24, 2010, the Perkins and Wells Fargo engaged in another unsuccessful mediation session. The stay in the foreclosure action expired on September 1, 2010, and, on that date, the Perkins took their house off the market. The Franklin County Court issued an Order of Sale to the Franklin County Sheriff on September 13, 2010.

On September 20, 2010, the Perkins filed a motion to vacate the Foreclosure Judgment pursuant to Ohio Rule of Civil Procedure 60(B). (ECF No. 25-13.) Rule 60(B) provides that a court may relieve a party from a final judgment if, *inter alia*, the party has newly discovered evidence, there is evidence of fraud, or any other reason justifies relief from the judgment. Ohio R. Civ. P. 60(B). The Perkins argued that Wells Fargo's conduct in causing them to believe that Wells Fargo had to approve the sale of their residence constituted grounds to vacate the Foreclosure Judgment. The Common Pleas Court denied the Perkins' motion on October 19, 2010.

The Perkins appealed the court's denial of its Rule 60(B) motion to the Ohio Court of Appeals, Tenth Appellate District ("Appeals Court "). ("Appellate Brief," ECF No. 25-15.) The Perkins argued that the Common Pleas Court erred in concluding that the Perkins did not have a meritorious defense to the foreclosure judgment. Specifically, the Perkins argued that Wells Fargo had acted wrongfully in informing them that it had to approve the sale of their residence, that Wells Fargo had submitted a fraudulent affidavit with its motion of default judgment, and that Wells Fargo did not have standing to file its Foreclosure Complaint.

While their appeal was pending, the Perkins were notified that a second Sheriff's sale of their home had been scheduled for January 7, 2011. The Perkins obtained another stay of the proceedings on December 22, 2010.

In early 2011, the Perkins discussed their repayment options with Fifth Third and were informed that they could still proceed with a short sale on their residence. The Perkins re-listed their residence and received two bids, which they presented to Fifth Third. Fifth Third agreed to approve the short sale but the Perkins could not afford the payoff amount at closing. The Perkins

therefore were not able to complete the sale of their residence.

On August 2, 2011 the Appeals Court denied the Perkins' appeal and affirmed the Common Pleas Court's ruling. ("Appellate Ruling," ECF No. 25-16.) In so holding, the Appeals Court considered whether the Perkins had presented valid counterclaims in their Rule 60(B) motion. (*Id.* at 10.) The Appeals Court held that the Perkins' counterclaims for breach of fiduciary duty and intentional misrepresentation lacked merit and that the Perkins therefore did not have a meritorious defense to the Foreclosure Judgment. (*Id.* at 14.) The Appeals Court also found that the Perkins had waived their arguments regarding the allegedly fraudulent affidavits and Wells Fargo's lack of standing because they failed to raise these arguments before the trial court. The Perkins applied to the appellate court for reconsideration but the court denied their application. The Perkins did not appeal.

On October 24, 2011, the Perkins moved from state to federal court and filed the present complaint, which they amended on November 17, 2011. ("Amended Complaint," ECF No. 23.) The Amended Complaint names Wells Fargo, Fifth Third, and Lerner Sampson as defendants.

Each defendant now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## II.  Standard

Dismissal under Rule 12(b)(6) is proper if a complaint fails to state a claim upon which a court can grant relief. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must provide fair notice of what the claim is and the grounds upon which it rests, and it must set forth sufficient factual allegations to suggest that the plaintiff is entitled to relief under those claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Conley v. Gibson*, 355

U.S. 41, 47 (1957)).  A court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and treat all well-pleaded allegations contained therein as true.  *Id*. at 555–56.

Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8 does not require detailed factual allegations, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Thus, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice to defeat a Rule 12(b)(6) motion to dismiss.  *Id*.

A complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  A plaintiff's factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim.  *Twombly*, 550 U.S. at 556.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should dismiss the complaint.  *Iqbal*, 556 U.S. at 679.

Claims of fraud are subject to heightened pleading requirements.  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged

misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).

As a final matter, the Court addresses the Perkins' argument throughout their briefs that a defendant may not argue the "merits" of a claim in the context of a Rule 12(b)(6) motion to dismiss. It is true that Rule 12(b)(6) is not the appropriate vehicle by which a defendant can challenge the factual allegations contained within a complaint. *See Twombly*, 550 U.S. at 555–56. But Rule 12(b)(6) is the appropriate vehicle to analyze the viability of the legal theories on which a plaintiff bases his or her claim. *See, e.g., Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Where Defendants argue that certain laws do not provide a claim for relief or that the pleaded facts do not establish the elements of a claim for relief, *see, e.g.*, ECF No. 31, at 32–33, Defendants are properly arguing their Rule 12(b)(6) motions. The Perkins' suggestion that such arguments go to the "merits of the claim" and thus are "not proper under a 12(b)(6) motion," *see, e.g.*, ECF No. 44, at 87, is without merit.

### III. Surreply

The Court briefly addresses the Perkins' motion to file a surreply to Lerner Sampson's reply in support of its motion to dismiss. (ECF No. 57.) The Perkins argue that Lerner Sampson presented this Court with "many false statements in its reply and commits fraud on the Court," (*id.* at 1), such that a surreply is warranted.

Local Civil Rule 7.2(a)(2) contemplates three types of legal memoranda: a motion, a memorandum in opposition, and a reply. The rule provides that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown."

8

S. D. Ohio Civ. R. 7.2(a)(2). "[T]his Court has consistently held that in order for a party to be given permission to file a sur-reply, the reply brief must raise new grounds that were not presented as part of the movant's initial motion." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-CV-1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010). A surreply is not warranted where the party merely seeks to help the court evaluate the opposing party's submissions. *See id.*; *see also White v. Honda of Am. Mfg., Inc.*, 191 F. Supp. 2d 933, 944 (S.D. Ohio 2002).

The Perkins do not argue that Lerner Sampson's reply raised new grounds that were not part of its initial motion; thus, the Perkins fail to demonstrate good cause. The Court **DENIES** the Perkins' motion for leave to file a surreply to Lerner Sampson's reply in support of its motion to dismiss. (ECF No. 57.)

## IV. Analysis

### A. Fraud / Breach of Fiduciary Duty (Counts Two, Eight, Nine, and Eighteen)

The Perkins bring three claims for fraud. The Court will address each claim chronologically as it is alleged to have taken place.

#### 1. Fraudulent Affidavits, Assignment of Mortgage, Note (Count Nine)

The Perkins allege that Wells Fargo submitted fraudulent affidavits and a fraudulent assignment of mortgage in the foreclosure action and that the Perkins sustained damages as a result. In conjunction with its motion for default judgment (which the Common Pleas Court denied as moot), Wells Fargo submitted an affidavit that was allegedly signed by a "documented robo signer," meaning that the affiant testified in an unrelated proceeding that she signed hundreds of affidavits a day on behalf of Wells Fargo and did not sign the affidavits in the

presence of a notary or verify any of the information contained within the affidavits other than her name.  The Perkins also allege that the affiant stated that the Perkins were not on active military duty without verifying this information.  The Perkins do not allege that any of the assertions contained within the affidavit were false or that they were on active military duty at the time the affidavit was executed.  The Perkins contest only the assertion that the affiant had personal knowledge of the Perkins' account.

In conjunction with its motion for summary judgment, Wells Fargo submitted to the Common Pleas Court an affidavit from a different individual who is not alleged to be a "documented robo signer."  Because this affidavit contains similar content to the first affidavit, the Perkins speculate that the second affiant also acted fraudulently by signing her affidavit without personal knowledge of the facts contained therein.  The Perkins do not contest any of the assertions in the summary judgment affidavit or otherwise argue that they were not in default of their mortgage at the time the affidavit was executed.

Finally, the Perkins argue that Wells Fargo acted fraudulently in filing the Foreclosure Complaint when it had no standing to do so.  The Perkins allege that the assignment of mortgage was not properly recorded and signed such that Wells Fargo never had standing to initiate the foreclosure action in state court.

The Court finds that the Perkins fail to state a claim for fraud.  As a starting point in its analysis, the Court briefly addresses Wells Fargo's and Lerner Sampson's arguments that the Court is precluded from adjudicating this claim.  Although these arguments are not the grounds on which the Court dismisses Count Nine, they are relevant to the Court's analysis.

The doctrine of preclusion includes collateral estoppel, or issue preclusion, and res

judicata, or claim preclusion. *Hammond v. Citibank, N.A.*, No. 2:10-CV-1071, 2011 WL 4484416, at *5 (S.D. Ohio Sept. 27, 2011). Issue preclusion prevents a court from considering an issue that has already been litigated and decided. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). To support a claim of issue preclusion in Ohio, a party must demonstrate that (1) the precise fact or issue was "actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction, and (3) . . . the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *State ex rel. Davis v. Public Emps. Ret. Bd.*, 120 Ohio St. 3d 386, 2008-Ohio-6254, 899 N.E.2d 975, ¶ 27.

In contrast, claim preclusion prevents a court from considering a matter that has never been litigated because of a determination that it should have been advanced in an earlier suit. *Migra*, 465 U.S. at 77 n.1. In Ohio, a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382, 653 N.E.2d 226 (1995). A final judgment on the merits precludes the parties from re-litigating issues that were or could have been raised in the previous action. *See, e.g., Estate of Hards v. Michael A. Shore Co., L.P.A.*, 8th Dist. No. 86103, 2005-Ohio-6385, at ¶ 6.

Here, neither issue nor claim preclusion bars the Court from considering the Perkins' fraud claim. The Perkins did not raise their arguments regarding the allegedly fraudulent documents in the foreclosure litigation or in their Rule 60(B) motion and the appellate court declined to consider these arguments on appeal. *See* Mot. to Vacate Foreclosure Judgment, ECF No. 25-13; Appellate Ruling, ECF No. 25-16, at 12. Thus, the issue has not been actually and

directly litigated and issue preclusion does not apply. Claim preclusion would be the more appropriate ground for dismissal since the Perkins could have raised these arguments in the foreclosure action; however, their fraud claim is not necessarily based on the same subject matter as the foreclosure action. *See Hammond*, 2011 WL 4484416, at *6 ("The subject matter of the foreclosure action was the liability of the parties on the Plaintiff's mortgage. The subject matter of the instant suit, in contrast, is the liability of the Defendants for the submission of the allegedly fraudulent affidavit."). The Perkins are permitted to litigate the issue of Wells Fargo's liability for the submission of fraudulent documents as a separate issue from that of the Perkins' liability on their mortgage. *Id.* The Court will consider the Perkins' fraud claim.

In Ohio, the elements of a fraud claim are (1) a representation, or silence where there is a duty to disclose (2) material to the transaction (3) made falsely, with knowledge of its falsity, or with such reckless disregard for whether it is true or false that knowledge may be inferred (4) with the intent of misleading another into relying upon it (5) justifiable reliance, and (6) injury proximately caused by the reliance. *Diebold Credit Corp. v. Coleman*, 5th Dist. No. 2003CA00127, 2003-Ohio-6874, at ¶ 20 (citing *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475, 700 N.E.2d 859 (1998)). The Perkins' claim is flawed with respect to several of these elements.

First, the Perkins fail to adequately allege that the affidavits were false. Allegations that an affiant likely signed a large number of affidavits in a short period of time are insufficient to support the inference that the affiant did not have personal knowledge of the specific file at issue. *Bucy v. Aurora Loan Servs., LLC*, No. 2:10-cv-1050, 2011 WL 1044045, at *6 (S.D. Ohio Mar. 18, 2011). The Perkins' speculation that the affiants in question might not have had

personal knowledge of the Perkins' file when they signed the affidavits does not permit the Court to infer that the affidavits were false. *Id.*; *see also Twombly*, 550 U.S. at 556.

Second, the Perkins fail to allege that the allegedly fraudulent affidavits proximately caused their injuries. Because the Perkins do not challenge the substantive assertions in Wells Fargo's affidavits—i.e., the amount owed on the mortgage or the fact that the Perkins were in default—the Court cannot conclude that any misrepresentation of personal knowledge was the proximate cause of their injuries. *See Bucy*, 2011 WL 1044045, at *6. This is especially true with respect to the affidavit signed by a "documented robo signer" that Wells Fargo attached to its motion for default judgment. The Perkins do not allege any facts to suggest that the Common Pleas Court reviewed or considered this affidavit; the Foreclosure Judgment states only that the Common Pleas Court considered the affidavit attached to Wells Fargo's motion for summary judgment. (Foreclosure Judgment, ECF No. 25-7, at 5.) The Perkins fail to link the affidavit signed by a "documented robo signer" to any alleged injury.

Finally, the Perkins do not allege adequately that Wells Fargo intended for *them* to rely on the fraudulent documents or that *they* justifiably relied on the fraudulent documents. The Perkins allege that Wells Fargo submitted fraudulent documents to the Common Pleas Court and therefore committed fraud on the court. But "[a] plaintiff may only bring a fraud claim where the defendant made the representations to induce the plaintiff, not a third party, to act upon them." *Hammond*, 2011 WL 4484416, at *9; *see also Moses v. Sterling Commerce Am., Inc.*, 10th Dist. No. 02AP-161, 2002-Ohio-4327, ¶ 21. The Perkins' allegations that Wells Fargo intended the court to rely on the fraudulent documents and that the court did so rely are insufficient to support the Perkins' fraud claim. *See Moses*, 2002-Ohio-4327, at ¶ 21;

13

*Castellanos v. Deutsche Bank*, No. 1:11-cv-815, 2012 U.S. Dist. LEXIS 93455, at *12 (S.D. Ohio July 6, 2012) (dismissing a plaintiff's fraud claim on allegations that the defendant submitted a fraudulent assignment of mortgage in a foreclosure proceeding because the assignment was submitted to and directed toward the foreclosure court and therefore intended to induce the court, and not the plaintiff, to act); *Mccubbins v. BAC Home Loans Serving, L.P.*, No. 2:11-cv-547, 2012 U.S. Dist. LEXIS 5620, at *12–13 (S.D. Ohio Jan. 18, 2012) (same); *Hammond*, 2011 WL 4484416, at *9 (reaching the same conclusion regarding an allegedly false affidavit that the defendant submitted in a foreclosure proceeding). "If [the Perkins] believe[] the Common Pleas judgment was obtained by fraud on that court, [their] remedy is by way of a motion for relief from judgment under Ohio R. Civ. P. 60(B), not by way of a collateral attack on that court's judgment." *Thyne v. GMAC Mortg. Corp.*, No. 3:09-cv-377, 2010 WL 3075185, at *4 (S.D. Ohio Aug. 4, 2010); *see also James v. Guaranteed Rate, Inc.*, No. 1:09-cv-673, 2012 WL 3023226, at *5 (S.D. Ohio July 24, 2012).

The Perkins attempt to bypass these principles by arguing that they relied on the allegedly fraudulent documents because, "had [they] known the documents were fraudulent, they would have challenged Wells Fargo's Complaint in foreclosure." (ECF No. 44, at 73.) But this argument is relevant only to the issue of the Perkins' ultimate liability on their mortgage—in other words, the Perkins wish they had challenged the fraudulent documents (e.g., the assignment of mortgage) and possibly persuaded the court to conclude that they were not in default on a mortgage with Wells Fargo—or their desire to correct a fraud on the court. The Franklin County Court has already litigated the issue of the Perkins' liability on their mortgage with Wells Fargo and this Court is precluded from reconsidering that decision. *See Hammond*,

14

2011 WL 4484416, at *6.  If the Perkins seek to rectify a fraud on the court, Rule 60(B) provides

their sole recourse.  *Thyne*, 2010 WL 3075185, at *4.

An additional ground exists to dismiss the Perkins' fraud claim with respect to the

assignment of mortgage.  The Court agrees with Defendants that the issue of whether the

assignment was properly recorded would be relevant to Wells Fargo's position with other

creditors and not the validity of the lien.  *Martin v. Select Portfolio Serving Holding Corp*., No.

1:05-cv-273, 2008 WL 618788, at *5 (S.D. Ohio Mar. 3, 2008).  In other words, the issue of

whether the assignment was properly recorded does not affect the Common Pleas Court's finding

that the Perkins were in default on their mortgage.  *See id*.  The Perkins therefore cannot link the

allegedly incorrect assignment of mortgage to any alleged injury.

Because the Perkins do not allege the elements of a fraud claim, the Court will not

consider Wells Fargo's arguments regarding the witness immunity privilege.  The Court

**GRANTS** Wells Fargo's and Lerner Sampson's motions to dismiss Count Nine of the Amended

Complaint.

2.  Short Sale Process (Count Two) / Breach of Fiduciary Duty (Count Eight)

The Perkins allege that Wells Fargo, Lerner Sampson, and Fifth Third acted fraudulently

in conjunction with the failed sale of the Perkins' residence.  The Perkins allege that "Wells

Fargo supplied false information to the Perkins by insisting that it had to conduct a short sale

approval, when in fact it did not" and then "claimed to be conducting a short sale review, when

in fact it was not."  (ECF No. 23 ¶ 173.)  The Perkins allege that Fifth Third and Lerner Sampson

acted fraudulently because they knew that the sale was not a short sale that required Wells

Fargo's approval but failed to inform the Perkins of this fact.

15

This Court is collaterally estopped from considering the fraud and fiduciary duty claims against Wells Fargo. The Perkins raised the same argument that they currently are presenting to this Court—namely, that Wells Fargo misled the Perkins into thinking it was approving the short sale when it knew that such approval was unnecessary—in their Rule 60(B) motion asking the Common Pleas Court to revisit its Foreclosure Judgment. (Mot. to Vacate Foreclosure Judgment, ECF No. 25-13, at 1–4.) The Common Pleas Court denied the motion, stating that it could not pass judgment on the conduct surrounding the short sale because such conduct was not a defense for purposes of Rule 60(B). (Order Denying Mot. to Vacate Judgment, ECF No. 25-14, at 4.) The Perkins appealed this decision to the Appeals Court and fully explained their view that Wells Fargo acted fraudulently in conjunction with the Perkins' attempt to sell their residence. (Appellate Brief, ECF No. 25-15, at 2–22.) Unlike the Common Pleas Court, the Appeals Court assumed without deciding that a counterclaim can be a meritorious defense and therefore grounds for granting a Rule 60(B) motion. (Appellate Ruling, ECF No. 25-16, at 8.) The Appeals Court therefore analyzed whether the Perkins had stated a valid claim for "intentional misrepresentation," which is substantively identical to a claim for common law fraud in Ohio.[2] (*Id.* at 9–10.)

The Appeals Court found that the Perkins had not stated a claim for intentional misrepresentation because Wells Fargo's representation to the Perkins that it would have to

---

[2] The elements of a claim for intentional misrepresentation are: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent to mislead another to rely upon it; (5) justifiable reliance. (Appellate Ruling, ECF No. 25-16, at 9–10 (citing *Nichols v. Schwendeman*, 10th Dist. No. 07AP-433, 2007-Ohio-6602, ¶ 27).)

approve a short sale was not false. (*Id*. at 11.) The court held that, in informing the Perkins that it had to approve a short sale, Wells Fargo "was merely informing the Perkins of what Ohio law required for a short sale to occur." (*Id*.) Ultimately, the court found, "Wells Fargo's approval proved unnecessary because the contract price for the purchase of the Perkins' home exceeded the amount due on the mortgage loan . . . [a]lthough the amount of the purchase price removed the necessity for Wells Fargo's approval, it did not render Wells Fargo's earlier representation false." (*Id*.) Because the Perkins have actually and directly litigated the issue of whether Wells Fargo supplied false information by insisting that it had to conduct a short sale review, and because a court of competent jurisdiction has held that the Perkins' allegations are insufficient to demonstrate that Wells Fargo supplied false information, this Court is precluded from reconsidering the issue. *See State ex rel. Davis*, 120 Ohio St. 3d 386 ¶ 27.

To the extent that the Perkins now base their claim on Wells Fargo's conduct after it received the bids on the Perkins' residence, this claim also fails. The Perkins presented these arguments to the Appeals Court, which found that Wells Fargo had not committed an intentional misrepresentation. (Appellate Brief, ECF No. 25-15, at 2–22; Judgment Entry, ECF No. 25-16, at ¶¶ 4, 24.) In so holding, the Appeals Court implicitly found that Wells Fargo's conduct after it received the bids was not fraudulent.

Even if the Perkins were correct that the Appeals Court's holding applies only to Wells Fargo's initial statement that it had to approve a short sale, the Perkins still fail to identify any fraudulent statements that Wells Fargo made after it received the initial bids. The Perkins allege that representatives from Wells Fargo told the Perkins that they were reviewing the file, instructed the realtor to stop showing the house, requested financial information from the

Perkins, and sent the Perkins and the interested buyer new contract addendums.  None of these statements can be considered "false;" the Perkins admit that Wells Fargo would have had to review the bid to determine that, considering any interest and/or fees, the sale would not be a short sale with respect to Wells Fargo.  The Perkins' allegations are insufficient for the Court to infer that Wells Fargo made any statement with knowledge of its falsity.

The Perkins' theory of the case is that Wells Fargo, Fifth Third, and Lerner Sampson each had the affirmative duty to correct the Perkins' belief that the sale of their residence was a short sale with respect to Wells Fargo.  By failing to inform the Perkins of this fact and allowing the unnecessary review period to take place, the Perkins argue, each Defendant committed a fraudulent misrepresentation.

The Perkins' argument fails to recognize that silence is only actionable misconduct where there exists a duty to disclose.  *See, e.g., Diebold Credit Corp.*, 2003-Ohio-6874, at ¶ 20.  Here, the Appeals Court has already concluded that Wells Fargo did not owe a fiduciary duty to the Perkins that would have triggered a duty to disclose.  (Appellate Ruling, ECF No. 25-16, at 9.)  In so holding, the Appeals Court noted that "[a] fiduciary relationship can only arise between a debtor and a creditor under special circumstances . . . '[u]nless otherwise expressly agreed in writing, the relationship between a bank and its obligor, with respect to any extension of credit, is that of a creditor and debtor, and creates no fiduciary or other relationship between the parties.' "  (Appellate Ruling, ECF No. 25-16, at 9 (citing Ohio Rev. Code 1109.15(E).)  Because the Perkins failed to identify a document wherein Wells Fargo agreed to act as the Perkins' fiduciary, the Appeals Court concluded that no fiduciary relationship existed.  (*Id*.)  This Court is precluded from reconsidering this finding.  *See State ex rel. Davis*, 120 Ohio St. 3d

386 ¶ 27.

The Court concludes that neither Fifth Third nor Lerner Sampson had a duty to correct the Perkins' mistaken belief that the sale of their home was a short sale with respect to Wells Fargo. The Perkins did not identify any writing that obligated Fifth Third to act as the Perkins' fiduciary; thus, for the same reasons that the Appeals Court espoused, the Court concludes that Fifth Third did not have a fiduciary relationship with the Perkins that would have triggered a duty to disclose. *See* Appellate Ruling, ECF No. 25-16, at 9. The Perkins do not allege that Lerner Sampson agreed to act as their fiduciary and do not identify any legal duty that would have obligated Lerner Sampson to assist the Perkins in the sale of their residence. Absent a duty to disclose, the Perkins cannot demonstrate that any defendant acted fraudulently in the short sale process.

The Perkins' attempt to add an alternative claim of negligence to their fraud claim similarly fails. In the Amended Complaint, the Perkins allege that Wells Fargo's representations were "intentional, or in the alternative, negligent." (Am. Compl., ECF No. 23 ¶ 173.) Because it has already been determined that Wells Fargo's representations were not false, there is no merit to a claim of negligent misrepresentation. The Perkins' attempt to amend their complaint in their response in opposition to Wells Fargo's motion by adding an "alternative claim of Negligence," in that "Wells Fargo failed to exercise ordinary care and meet the standards of good faith and fair dealing," is duplicative of Count Five (breach of implied covenant of good faith and fair dealing) and was not pleaded in the Amended Complaint. *See, e.g., Pa. ex rel. Zimmerman*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotations omitted)). The Amended Complaint

fails to provide sufficient notice of a negligence claim and the grounds upon which it rests.

The Perkins fail to state a claim for fraud regarding each defendant's conduct surrounding the attempted sale of the Perkins' residence. The Court **GRANTS** Wells Fargo's, Lerner Sampson's, and Fifth Third's motions to dismiss Count Two of the Amended Complaint.

Because no fiduciary relationship existed between any defendant and the Perkins, the Court finds that the Perkins fail to state a claim for breach of fiduciary duty. The Court **GRANTS** Wells Fargo's and Fifth Third's motions to dismiss Count Eight of the Amended Complaint.

3. Fifth Third's Alleged Misrepresentations (Count Eighteen)

The Perkins allege that Fifth Third acted fraudulently in stating that if the Perkins did not make escalating payments on their loan, they would not be eligible to sell their residence as a short sale. The Court finds that the Perkins again fail to state a claim for fraud.

As Fifth Third points out, and as the Perkins concede, a bank is under no obligation to approve a short sale and allow the homeowner to sell his or her property for less than the full amount due on a mortgage loan that is secured by the property. *See Cattell v. Lake Cty. Bd. Of Revision*, 11th Dist. No. 2009-L-161, 2010-Ohio-4426, at ¶ 23. There is no dispute that the Perkins sought to sell their home for an amount less than the amount required to pay off their loan with Fifth Third in full. The Perkins do not make any attempt to explain how Fifth Third's statement was false when it did not have to approve the sale in the first place. The Perkins' argument that the "[t]he loss of a short sale option was a hammer held over the Perkins [sic] head to pay escalating monies to Fifth Third . . . or else," (ECF No. 46, at 6), does not support their position.

Because the Perkins fail to identify a false statement, their alternative argument that Fifth Third acted negligently in making a false statement is without merit. The Court **GRANTS** Fifth Third's motion to dismiss Count Eighteen of the Amended Complaint.

   *B. Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts Two and Ten)*

   The Perkins bring two claims for violations of RICO, 18 U.S.C. § 1962 *et seq*. RICO provides a private claim for relief for any person that has been injured by a violation of § 1962. 18 U.S.C. § 1964(c). The Perkins allege that Defendants violated § 1982 (a), (b), (c), and (d), which provide that:

   (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code [18 USCS § 2], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

   (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

   (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

*Id*. § 1962.

A plaintiff cannot demonstrate a violation of RICO without pleading "a pattern of racketeering activity" or the "collection of an unlawful debt." 18 U.S.C. § 1982 (a)–(d). The Perkins do not allege that this case involves an "unlawful debt," which the statute defines as

a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

*Id*. § 1961(6). The Perkins' argument that § 1961(6) might apply because this area of the law is not highly developed is without merit.

The Perkins similarly fail to allege a pattern of racketeering activity. Racketeering activity is defined to include acts that are indictable under specific statutory provisions of the United States Code. *Id*. § 1961(1). A pattern of racketeering activity "requires at least two acts of racketeering activity." *Id*. § 1961(5).

The Perkins allege that first RICO claim is predicated on claims of mail fraud and wire fraud, based on the allegedly fraudulent conduct surrounding the failed sale of the Perkins' residence. The Court found in Section IV(A)(2) of this Opinion and Order that Defendants did not act fraudulently in communicating to the Perkins that Wells Fargo would need to approve a short sale, indicating that Wells Fargo was reviewing the proposed contract, and/or in failing to correct the Perkins' belief that the sale was a short sale with respect to Wells Fargo. The

Perkins' allegations therefore do not constitute mail and/or wire fraud. The Perkins' short sale allegations fail to state a RICO claim.

The Perkins' second RICO claim is also predicated on claims of mail fraud and wire fraud, based on the allegedly fraudulent documents that Wells Fargo submitted to the Common Pleas Court in the foreclosure action. The Court found in Section IV(A)(1) of this Opinion and Order that the Perkins failed to adequately allege that the affidavits were false and/or caused injury to the Perkins. The Court also found that the Perkins failed to connect the allegedly faulty assignment of mortgage to their alleged injuries. The Perkins make no attempt to allege that Defendants engaged in a pattern of filing foreclosure complaints without properly recording the mortgage. The Perkins' allegations do not state a RICO claim.

The Court **GRANTS** Wells Fargo's, Lerner Sampson's, and Fifth Third's motions to dismiss Count One of the Amended Complaint. The Court similarly **GRANTS** Wells Fargo's and Lerner Sampson's motions to dismiss Count Ten of the Amended Complaint.

*C. Violation of the Real Estate Settlement Procedures Act (Wells Fargo and Fifth Third) (Count Three)*

In Count Three, the Perkins allege that Wells Fargo and Fifth Third violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, by failing to respond in a proper and timely way to the Perkins "qualified written requests" in violation of 12 U.S.C. 2605(e). The statute defines "qualified written request" as

> (B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>    (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>    (ii) includes a statement of the reasons for the belief of the borrower, to the extent

applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Section 2605(e) provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information *relating to the servicing of such loan,* the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period."  12 U.S.C. § 2605(e) (emphasis added).  "Servicing" means

receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 USCS § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

*Id*. § 2605(i)(3).  After receiving a qualified written request relating to the servicing of the loan, the servicer must, within sixty days, conduct an investigation and provide a written explanation that includes "information requested by the borrower or an explanation of why the information requested is unavailable" as well as the name of an individual employed by the servicer who can provide assistance to the borrower.  *Id*. § 2605(e).

The Perkins contend that they sent Wells Fargo and Fifth Third "written applications for a short sale, including a hardship letter, and written submission of financial information" and that Wells Fargo and Fifth Third failed to respond appropriately under § 2605(e).  But requests to modify the terms of a loan do not "relate to the servicing of a loan" within the meaning of the statute.  *See Phillips v. Bank of Am. Corp*., No. 10-cv-0400, 2010 U.S. Dist. LEXIS 35131, at *8–10 (N.D. Cal. Apr. 9, 2010) (holding that a request to modify the terms of a loan does not satisfy § 2605(e)); *cf. Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (noting that qualified written requests must "address the servicing of the loan,

and not its validity" because "§ 2605(e) expressly imposes a duty upon the loan servicer, and not

the owner of the loan"). Similarly, general hardship letters and submissions of financial

information do not suggest that the "account is in error" or specify any "information sought by

the borrower." 12 U.S.C. § 2605(e)(B)(ii); *see also Girgis v. Countrywide Home Loans, Inc*.,

No. 1:10-cv-00590, 2010 U.S. Dist. LEXIS 114842, at *13–17 (N.D. Ohio Oct. 28, 2010). The

Perkins fail to identify any qualified written request that would trigger the requirements of §

2605(e).

The Court **GRANTS** Wells Fargo's and Fifth Third's motions to dismiss Count Three of

the Amended Complaint.

D. *Violations of the Ohio Consumer Sales Practices Act ("OCSPA") (Counts Four,*

*Eleven, Seventeen)*

In Counts Four, Eleven, and Seventeen, the Perkins allege that Defendants committed

unfair deceptive trade practices, unconscionable acts or practices generally, and/or

unconscionable acts or practices concerning residential mortgages in connection with a

consumer transaction in violation of OCSPA, Ohio Rev. Code 1345.02, 1345.03 & 1345.031.

Presumably, the Perkins theorize that their mortgages with Wells Fargo and Fifth Third

constitute "consumer transactions" within the meaning of the statute and that Defendants

committed the aforementioned acts in connection with these mortgage transactions.

OCSPA does not apply to transactions between financial institutions and their customers.

*See* Ohio Rev. Code Code 1345.01(A); *Reagans v. Mountainhigh Coachworks, Inc*., 117 Ohio

St. 3d 22, 881 N.E.2d 245, 2008-Ohio-271, ¶ 33. Such transactions are not "consumer

transactions" for purposes of the statute. Ohio Rev. Code Code 1345.01(A). When an attorney

represents a financial institution in transaction that is exempted from the statute, the attorney is similarly exempt from liability under the statute. *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 869 (S.D. Ohio 2005). The Perkins' cited authority does not cast doubt on these legal principles.

The Perkins do not dispute the facts that Wells Fargo and Fifth Third are financial institutions within the meaning of the statute and/or that Lerner Sampson represented Wells Fargo in conjunction with the Perkins' mortgage with Wells Fargo. Thus, all Defendants are exempt from liability under the statute and the Perkins fail to state a claim under OCSPA.

The Court **GRANTS** Wells Fargo's and Lerner Sampson's motions to dismiss Counts Four and Eleven of the Amended Complaint. The Court similarly **GRANTS** Fifth Third's motion to dismiss Counts Four and Seventeen of the Amended Complaint.

*E. Breach of Implied Covenant of Good Faith and Fair Dealing and Unconscionability (Counts Five and Six)*

The Perkins bring claims for breach of the implied covenant of good faith and fair dealing and for unconscionability. Both of these claims fail.

Ohio courts do not recognize a claim of breach of the implied covenant of good faith and fair dealing absent a claim that the opposing party breached an underlying contract. *Mortg. Elec. Registration Sys. v. Mosley*, 8th Dist. No. 93170, 2010-Ohio-2886, ¶ 49. The Perkins admit that they—and not Wells Fargo—breached the terms of the mortgage contract. The Perkins implicitly concede that Wells Fargo acted in accordance with the mortgage contract when it "chose to accelerate per #22 . . . of the Mortgage" (ECF No. 44, at 58); thus, the Perkins' allegations of bad faith do not state a claim for relief.

Unconscionability is a defense to a claim for breach of contract and is not an independent claim for relief. *Pruitt v. Strong Style Fitness*, 8th Dist. No. 96332, 2011-Ohio-5272, ¶ 16. To the extent that the Perkins are attempting to vacate the Common Pleas Court's Foreclosure Judgment against them by arguing that their mortgage agreement with Wells Fargo was unconscionable, the Court is precluded from considering this claim. *See Grava*, 73 Ohio St. 3d at 379.

The Court **GRANTS** Wells Fargo's and Fifth Third's motions to dismiss Counts Five and Six of the Amended Complaint and Lerner Sampson's motion to dismiss Count Six of the Amended Complaint.

### F. Tortious Inference of Contract (Counts Seven and Twenty-One)

The Perkins allege that Wells Fargo and Fifth Third tortiously interfered with the contract between the Perkins and the potential buyer of their residence by unnecessarily delaying the short sale process. The Perkins also allege that Fifth Third tortiously interfered with the contract between the Perkins and their realtor when it informed the Perkins that they would have to make escalating payments on their equity line of credit in order for Fifth Third to approve a short sale. Neither of these allegations state a claim for tortious interference with contract.

There are five elements to a claim for tortious interference with contract: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 707 N.E.2d 853 (1999) (syllabus).

The Perkins admit that they could not sell their residence as a short sale without proper

approval from the appropriate lenders; in other words, they could not have sold their residence to the first potential buyer as a short sale unless and until Fifth Third approved the sale. The "contract" with the potential buyer was, by definition, contingent on this approval. Because the alleged activity took place before Fifth Third gave its approval, the Perkins' claim is not one for interference with an existing contract. The Perkins' claim is for interference in the process of obtaining the authority to enter into a contract in the first place. The Perkins do not cite any authority that would permit the Court to recognize such a claim.

The Court also agrees with Wells Fargo that the Perkins failed to plead facts sufficient to support the inference that Wells Fargo intentionally and without justification caused the potential buyer to back out of the sale. Wells Fargo was entitled to pursue a Sheriff's sale on the Perkins' residence pursuant to Foreclosure Judgment. *See Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 2d Dist. No. 2010 CA 41, 2011-Ohio-2681, ¶ 80. Wells Fargo was also entitled to review any contract that the Perkins presented to it as a "short sale." *See* Appellate Judgment, ECF No. 25-16, at 10. That the Perkins mistakenly believed that the sale was a short sale with respect to Wells Fargo and that the mistake was not immediately corrected does not support the inference that Wells Fargo intentionally caused the third party buyer to back out of the sale.

Regarding the Perkins' allegations against Fifth Third, the Perkins allege that they ended their listing agreement with their realtor because they could not make the escalating payments that Fifth Third indicated were required to approve a short sale. The Perkins do not allege that any contract was breached when they ended the listing agreement; their theory of tortious inference with contract in unclear in this respect. Because the Court already found that Fifth Third did not fraudulently misrepresent any information when it informed the Perkins what

would be required to sell their residence as a short sale, the Court cannot conclude that Fifth Third acted wrongly in intentionally procuring the breach of any contract.

The Court **GRANTS** Wells Fargo's motion to dismiss Count Seven of the Amended Complaint, Lerner Sampson's motion to dismiss Count Seven of the Amended Complaint, and Fifth Third's motion to dismiss Counts Seven and Twenty-One of the Amended Complaint.

    *G. Violation of Ohio Rev. Code 5301.252, Ohio Rev. Code 5301.32, and Ohio Rev. Code 1127 (Counts Twelve, Thirteen, and Sixteen)*

The Perkins allege that Wells Fargo and Lerner Sampson violated Ohio Rev. Code 5301.252 by making a false statement in an affidavit. Wells Fargo and Lerner Sampson moved to dismiss this claim; the Perkins did not address Count Twelve in their responses to each defendant's motion to dismiss and therefore concede that Count Twelve fails to state a claim. The Court **GRANTS** Wells Fargo's and Lerner Sampson's motions to dismiss Count Twelve of the Amended Complaint.

The Perkins also allege that Wells Fargo and Lerner Sampson did not record the Perkins' mortgage as Ohio Rev. Code 5301.32 requires and that, as a result, Wells Fargo committed a fraud upon the Court and the Perkins by filing a complaint with the Common Pleas Court when it had no standing to do so. The Court has already found that the Perkins cannot recover for a faulty assignment of mortgage because Ohio Rev. Code 5301.32 defines a creditor's rights with respect to other creditors and does not affect the validity of the lien. *See* Section IV(A)(1) of this Opinion and Order. Furthermore, to the extent that the Perkins are arguing that the faulty recording affected the Common Pleas Court's decision regarding the Perkins' liability on their mortgage, the Court is precluded from considering that claim. *See* Section IV(A) of this Opinion

and Order.  To the extent that the Perkins seek to rectify a fraud on the state court, their only recourse is through Rule 60(B).  *Thyne*, 2010 WL 3075185, at *4.  The Court **GRANTS** Wells Fargo's and Lerner Sampson's motions to dismiss Count Thirteen of the Amended Complaint.

Finally, the Perkins allege that Wells Fargo violated Ohio Rev. Code 1127, which is a criminal statute that outlines crimes and prohibited activities for banks.  Wells Fargo argues, and the Court agrees, that Ohio Rev. Code 1127 does not provide a private right of action.  The Perkins do not offer any substantive argument in response.  Accordingly, the Court **GRANTS** Wells Fargo's motion to dismiss Count Sixteen of the Amended Complaint.

### H.  Fair Debt Collections Practices Act ("FDCPA") (Count Fourteen)

The Perkins allege that Lerner Sampson violated the FDCPA, 15 U.S.C. § 1692e(5), § 1692e(10) and § 1692f, by filing false affidavits and using deceptive means to collect a consumer debt.  The Court found in Section IV(A)(1) of this Opinion and Order that the Perkins failed to allege facts sufficient to support the inference that the challenged affidavits were false. The Perkins do not explain how Lerner Sampson used deceptive means to collect the Perkins' debt.

An additional ground exists to dismiss the Perkins' FDCPA claim.  The Perkins do not dispute Lerner Sampson's argument that FDCPA claims are subject to a one-year statute of limitations and that, if a foreclosure is filed and served more than a year before an FDCPA lawsuit, then claims based upon events that transpired in the foreclosure process are time-barred. *See, e.g., Ball v. Ocwen Loan Servicing, LLC*, Case No. 1:12-CV-0604, 2012 U.S. Dist. LEXIS 68173, at *14 (N.D. Ohio May 16, 2012).  The Perkins also do not dispute the fact that Wells Fargo initiated the foreclosure action on August 24, 2009 and that the affidavits in question were

filed on December 30, 2009, August 27, 2009, and January 15, 2010—over a year before the

Perkins initiated the present action on October 24, 2011. The Perkins' sole argument on this

point is that "the FDCPA charges should be tolled as the Perkins brought up the fraudulent

affidavits and Assignment of Mortgage to the appellate court in an attempt to Vacate the Decree

in Foreclosure." (ECF No. 53, at 5.) This argument fails.

Equitable tolling is only proper if the plaintiff can show that he or she has been pursuing

his or her rights diligently and that some extraordinary circumstance stood in the way. *Ball*,

2012 U.S. Dist. LEXIS 68173, at *15–16 (noting that the plaintiff has the burden of persuading

the court that he or she is entitled to equitable tolling). Courts in the Sixth Circuit generally

consider the following factors in determining whether to toll the statute of limitations: "(1) lack

of notice of the filing requirement, (2) lack of constructive knowledge of the filing requirement,

(3) diligence in pursuing one's rights, (4) absence of prejudice to the defendant, and (5) the

plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Chavez v.

Carranza*, 559 F.3d 486, 492 (6th Cir. 2009). Equitable tolling in the Sixth Circuit is rare. *Ball*,

2012 U.S. Dist. LEXIS 68173, at *16.

Here, the Perkins do not offer any compelling reasons as to why the statute of limitations

should be tolled. The Perkins did not challenge the allegedly fraudulent affidavits in state court.

*Cf. Ball*, 2012 U.S. Dist. LEXIS 68173, at *18–19 (denying the plaintiff's request for equitable

tolling when there was no indication that the defendants did anything to prevent the plaintiffs

from discovering the information on which their claim was based). The Perkins then failed to

raise their arguments regarding the allegedly fraudulent documents in a Rule 60(B) motion to the

Common Pleas Court. The Perkins ultimately presented their arguments to the Appeals Court,

which declined to consider the allegedly fraudulent affidavits and assignment of mortgage because the Perkins failed to raise these issues before the Common Pleas Court. The Perkins were not tricked into allowing the filing deadline to pass; instead, they waited to investigate the relevant documents and then ultimately unsuccessful pursued their claim in state court. The Perkins fail to meet their burden in demonstrating that equitable tolling is warranted.

The Court **GRANTS** Lerner Sampson's motion to dismiss Count Fourteen of the Amended Complaint.

### I. Unreasonable Collection Efforts (Counts Fifteen and Nineteen)

The Perkins allege that the collection efforts of Wells Fargo, Lerner Sampson, and Fifth Third were unreasonable and that this "wrongful behavior" caused damages to the Perkins. Defendants argue that Ohio courts do not recognize a claim for "unreasonable collection efforts" and the Perkins do not offer any substantive argument in response. Without more, the Perkins fail to provide sufficient notice of their claim and the grounds upon which it rests. *See Twombly*, 550 U.S. at 570. The Court **GRANTS** Wells Fargo's and Lerner Sampson's motion to dismiss Count Fifteen of the Amended Complaint as well as Fifth Third's motions to dismiss Count Nineteen of the Amended Complaint.

### J. Unjust Enrichment (Count Twenty)

The Perkins allege that they conferred a benefit on Fifth Third by making escalating payments on their equity line of credit and that it was unjust for Fifth Third to retain this benefit. Fifth Third argues, and the Court agrees, that the Perkins cannot recover in quasi-contract where an express contract (the Perkins' second mortgage with Fifth Third) governs the parties relationship and the subject matter of the dispute. *See, e.g., Ruggles v. Bulkmatic Transp. Co.*,

No. C2-03-617, 2004 WL 5376213, at *5 (S.D. Ohio June 23, 2004). The Perkins do not offer any substantive argument on this point. Accordingly, the Court **GRANTS** Fifth Third's motion to dismiss Count Twenty of the Amended Complaint.

### V. Conclusion

For the foregoing reasons, the Court finds that the Amended Complaint fails to state a claim upon which the Court can grant relief. The Court takes the following action with respect to the outstanding motions in this matter:

The Court **GRANTS** Wells Fargo's motion to dismiss the Amended Complaint (ECF No. 31), **GRANTS** Fifth Third's motion to dismiss the Amended Complaint (ECF No. 34), and **GRANTS** Lerner Sampson's motion to dismiss the Amended Complaint (ECF No. 45). The Court **DENIES** the Perkins' motion for leave to file a surreply to Lerner Sampson's reply in support of its motion to dismiss. (ECF No. 57.)

The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

            /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE